## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**WILLIAM K. SAPP,**

      **Petitioner,**

               :

   **v.**

**CHARLOTTE JENKINS,**
**Warden, Chillicothe**
**Correctional Institution**

      **Respondent.**

**Case No. 2:17-cv-1069**
**Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A.**
**Jolson**

:

:

### OPINION AND ORDER

Petitioner, an inmate sentenced to death by the State of Ohio, has pending before this Court a habeas corpus petition pursuant to 28 U.S.C. § 2254. This matter is before the Court on Petitioner's Motions for Leave to File his Amended Petition for Writ of Habeas Corpus (ECF No. 56) and to Hold Proceedings in Abeyance Pending Exhaustion of State Court Remedies (ECF No. 55), Respondent's Opposition (ECF No. 59), and Petitioner's Reply (ECF No. 67). For the reasons that follow, Petitioner's motions must be **DENIED** at this time, but without prejudice and subject to renewal, should Petitioner be able to more fully develop the record concerning the timeliness of his proposed amendments.

## I.    BACKGROUND

Petitioner filed a timely habeas corpus petition on October 31, 2018 (ECF No. 27), which Respondent answered with a Return of Writ on May 22, 2019 (ECF No.

30).  On July 10, 2018, not quite four months before the petition in this case was to be filed, the Ohio Public Defender's Office made a public records request on Petitioner's behalf to the Springfield Police Department essentially for all documents related to the murders of Phree Morrow, Martha Leach, and Belinda Anderson, as well as the attempted murder of Hazel Pearson.  (ECF No. 59-1.)  It appears from the record that the Springfield Police Department provided 12,775 pages of records some time in 2018, (ECF No. 67, at PageID 25694), and that Petitioner's counsel completed review of those records on December 19, 2019 (ECF No. 36, at PageID 9541).

During an August 27, 2019 telephone conference, Petitioner's counsel announced their procurement of those police records, as well as their intent to file a motion to amend the petition to add a never-before-raised claim alleging that the prosecution failed to disclose material evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  The Court accordingly stayed all of the filing deadlines set forth in its scheduling order (ECF No. 8), and established a briefing schedule for the motions to amend the petition and to stay these proceedings.  Following the expansion of the record with the police records, (ECF Nos. 38 and 47), Petitioner filed his motions to amend and for stay-and-abeyance on February 25, 2020.  Although circumstances in this case raise troubling questions about whether Petitioner was sufficiently represented in connection with his pursuit of state postconviction relief, and recognizing that the rules favor liberal allowance of

2

amendments, the Court is without sufficient information to rule with confidence that Petitioner's proposed amendments are timely.

## II.    STANDARDS OF REVIEW

A motion to amend a habeas corpus petition is, per 28 U.S.C. § 2242, subject to the same standards which apply generally to motions to amend under Fed. R. Civ. P. 15(a). The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. at 182; s*ee also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997) (citing *Foman* standard). In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, *i.e.*, if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992); *Commc'n. Sys., Inc. v. City of Danville*, 880 F.2d 887, 895-96 (6th Cir. 1989); *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Dev. Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980). Likewise, as noted above, a motion to amend may be denied if it is

brought after undue delay or with dilatory motive. *Foman*, 371 U.S. at 182; *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990).

A claim added by amendment "relates back" to the date of filing of the complaint in a civil case and thereby avoids any statute of limitations bar if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has applied the relation back doctrine narrowly in habeas corpus cases:

> An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.

*Mayle v. Felix*, 545 U.S. 644, 650 (2005). Further, when a petitioner seeks to add a never-before-raised claim based on newly discovered evidence, the one-year limitations period generally will begin to run on the date when the factual predicate could have been discovered through the exercise of due diligence. *See, e.g., Munchinski v. Wilson*, 694 F.3d 308, 327 (3d Cir. 2012) (citing 28 U.S.C. § 2244(d)(1)(D)). Even if a court finds that a claim is untimely under § 2244(d), the court should consider whether the claim is eligible for equitable tolling. *See, e.g., Giles v. Beckstrom*, 826 F.3d 321, 325 (6th Cir. 2016); *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004); *see also Munchinski*, 694 F.3d at 328-29.

With respect to Petitioner's motion to stay these proceedings and hold them in abeyance: A state prisoner must exhaust available state court remedies before he can secure federal habeas corpus review. *Coleman v. Thompson*, 501 U.S. 722, 731

4

(1991); *Picard v. Connor*, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement when he raises the claim in a manner that affords the state courts a fair opportunity to address the federal constitutional issue. *See, e.g., Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Picard*, 404 U.S. at 275-76. Petitioner must have presented to the state courts the very claim for which he seeks federal review—setting forth essentially the same facts, evidence, and legal basis. *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Picard*, 404 U.S. at 275-76; *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If a petitioner fails to fairly present a claim and a state court remedy is still available for him to do so, then that claim is unexhausted and the petition would normally be subject to dismissal without prejudice for nonexhaustion. 28 U.S.C. § 2254(b), (c). When a district court is faced with a mixed petition containing both exhausted and unexhausted claims, the court has discretion to stay the petition and hold the proceedings in abeyance to allow the petitioner to present the unexhausted claims to the state courts. *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). In so holding, the Supreme Court emphasized that stay and abeyance should be utilized sparingly, explaining:

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Id.* at 277 (citing 28 U.S.C. § 2254(b)(2)).

5

## III.     ANALYSIS

### A.     Motion to Amend

Petitioner seeks to amend his petition to add a never-before-raised *Brady*

claim, as well as a supplemented ineffective-assistance-of-counsel claim.

Specifically, Petitioner seeks to add the following two claims:

> **Nineteenth Ground for Relief**:  William Sapp's convictions and
> death sentences are constitutionally infirm because the prosecution
> failed to provide trial defense counsel with exculpatory, material
> evidence.

Petitioner asserts in this proposed claim that the state failed to provide evidence

implicating one of the victim's father in the commission of murdering the two young

girls; evidence implicating Petitioner's younger brother in the commission of those

two murders; evidence that other individuals confessed to the murders; evidence

identifying individuals whose physical appearances matched the physical

appearances of the assailants; evidence identifying other individuals whom police

investigated because of those individuals' prior criminal history; evidence

identifying other individuals the police investigated; reports inconsistent with the

prosecution's theory of the case—such as the time of the offense, and facts

surrounding the abduction and the commission of the murders; reports that

impeached the prosecution's key witness; forensic reports; and evidence of the prior

bad acts of Petitioner's co-defendants.  (ECF No. 56-1, at PageID 25579-603.)

> **Twentieth Ground for Relief**: William Sapp's convictions and death
> sentences are constitutionally infirm because trial counsel failed to
> provide him with reasonably effective assistance of counsel during
> pretrial, trial, and mitigation phases.

6

Petitioner asserts that his trial counsel: failed to conduct a reasonable trial phase investigation—either induced by the prosecution's suppression of the *Brady* material set forth above or because, to the extent counsel received any of those materials, counsel failed to recognize the value of the materials; were ineffective during pretrial motion practice for insufficiently supporting their motion to suppress custodial statements and failing to challenge the state's use of hypnosis; were ineffective during *voir dire* for failing to challenge for cause a juror who was exposed to pretrial publicity, failing to challenge other jurors who indicated they could not fairly consider mitigation evidence, and failing to raise mitigation issues with all of the prospective jurors; were ineffective during the prosecution's case in chief for failing to cross examine the state's only eyewitness on multiple issues; were ineffective during the defense case in chief for relying on cross-examination of a police sergeant to establish certain details rather than calling witnesses who could have provided direct evidence of those details; and were ineffective during the mitigation phase for failing to emphasize the role Petitioner's other co-defendants played in the commission of the offenses, for failing to corroborate the testimony of their sole mental health expert, and for presenting mental health records without any testimony to explain the significance of the records.  (ECF No. 56-1, at PageID 25603-612.)

Petitioner's proposed ground nineteen, and at least the first sub-part of his proposed ground twenty[1], rely on 12,775 pages of materials that Petitioner obtained from the Springfield Police Department in 2018 through a public records request. Petitioner asserts that he is not guilty of undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies in his petition that would militate against allowing amendment.  (ECF No. 56, at PageID 25438-444.)  He additionally asserts that his proposed amendment would not unduly prejudice Respondent, and that his proposed claims are not futile.  Petitioner's explanation for his failure to obtain the police records at issue and present his proposed claims sooner is because of seriously deficient performance on the part of his postconviction attorney, as well as other failings during the postconviction process that, according to Petitioner, resulted in habeas counsel having to conduct an investigation that should have been conducted years ago.  *Id*. at PageID 25440.

Respondent disputes that Petitioner is "entitled, at this late date" to add "new, never-before-seen" *Brady* claims based on publicly available evidence.  (ECF No. 59, at PageID 25620.)  Relying on the decisions of *Rose v. Lundy*, 455 U.S. 509 (1982); *Duncan v. Walker*, 533 U.S. 167 (2001); *Mayle v. Felix*, 545 U.S. 644 (2005); and *Rhines v. Weber*, 544 U.S. 269 (2005), Respondent argues that Petitioner may not add new claims after the expiration of the one-year statute of limitations, and

---

[1]  Aside from the allegations relating to counsel's failure to obtain, or appreciate the value of, the *Brady* material set forth in proposed ground nineteen, Petitioner's proposed ground twenty largely mirrors ground ten as pleaded in the original petition.  *Compare* ECF No. 27, at PageID 9417-9426, *with* ECF No. 56-1, at PageID 25603-610.

may not add new claims solely to saddle his petition with unexhausted claims warranting stay-and-abeyance.  (ECF No. 59, at PageID 25621-632.)  Respondent also argues that the decision of *Cullen v. Pinholster*, 563 U.S. 170 (2011), forecloses "never-ending requests to add brand new claims . . . ."  (ECF No. 59, at PageID 25632.)  Respondent argues in the alternative that Petitioner's *Brady* claim is without merit, could have been raised at any time on the basis of those publicly available records, and is undercut by the fact that Petitioner is unequivocally and admittedly guilty.  *Id*. at PageID 25633-635.  Finally, Respondent argues that stay-and-abeyance is not warranted because Petitioner has no viable state remedies available to him.  *Id*. at PageID 25636-38.

In his reply, Petitioner offers several arguments in response, the gravamen of which is that even if postconviction counsel had managed to obtain the Springfield police records that Petitioner recently obtained through a public records request—an occurrence that Petitioner insists is by no means a given (ECF No. 67, at PageID 25694)—postconviction counsel could not have raised the proposed *Brady* and ineffective assistance claims at issue (1) because postconviction counsel never had access to a complete trial transcript or defense counsel's files; (2) because postconviction counsel rendered seriously deficient performance; and (3) because postconviction counsel at times, due to health issues and allowing his death penalty certification to lapse, actually and/or effectively abandoned Petitioner.  (ECF No. 67, at PageID 25693-706.)  Regarding the timeliness of his proposed claims, Petitioner offers essentially the same arguments set forth above in support of the argument

9

that he is entitled to equitable tolling of the one-year statute of limitations. *Id*. at PageID 25697-706. For the reasons that follow, the Court cannot find on the basis of the record as presently constituted that Petitioner has demonstrated that he is entitled to equitable tolling. That is not to say that he will not be able to do so.

As a preliminary matter, it does not appear to the Court that amendment is precluded under the standards established by Fed. R. Civ. P. 15(a) and the *Foman* decision. The underlying facts and circumstances asserted by Petitioner in support of his proposed *Brady* and ineffective-assistance claims may present proper subjects of relief, insofar as these claims in general are claims upon which habeas relief may be granted and on their face are not patently meritless. Respondent does not seriously contend, and the Court has no reason to believe, that Petitioner has acted in bad faith or has ever failed to cure deficiencies in his petition.

Notwithstanding Respondent's arguments to the contrary, the Court is not persuaded that Petitioner is acting with dilatory motive, or that undue delay or prejudice to Respondent would result from allowing amendment, in view of the fact that Petitioner's quest for obtaining the police records occurred in just the last two years and in a reasonable amount of time after habeas counsel assumed representation of Petitioner. Since obtaining the records, Petitioner has been in steady contact with the Court and appears to have been diligent in his review of, and expansion of the record with, the more than 12,000 pages at issue. And the fact that this case is in its relative infancy, as opposed to having proceeded to a substantive stage such as the completion of discovery or the briefing of summary

10

judgment, makes it difficult to find that amendment would unduly prejudice Respondent.

Respondent's citations to *Rose*, *Duncan*, *Mayle*, *Rhines*, and *Pinholster* do not persuade the Court otherwise. With respect to *Rose v. Lundy*, Respondent is correct that a mixed petition containing exhausted and unexhausted claims cannot be granted. (ECF No. 59, at PageID 25621.) That does not mean, however, that a mixed petition can never be allowed. *Rhines v. Weber*, which was issued to provide a roadmap for how district courts should handle mixed petitions, would not have been necessary if mixed petitions were never allowed. On the topic of *Rhines*, Respondent argues that *Rhines* does not support Petitioner's motion to amend to add unexhausted claims because the *Rhines* Court was faced with a petition that was already mixed, as opposed to a petition that would become mixed if amended. The Court is not persuaded that *Rhines* is limited in that manner, or that *Rhines* contains a prohibition against allowing amendment for the purposes of determining whether stay-and-abeyance is warranted, as Respondent argues. *Id.* at PageID 25622, 25624-625. To that point, the Court hastens to note that its determination of whether amendment is warranted in this case will be informed solely by the standards governing amendment set forth in Fed. R. Civ. P. 15(a) and *Foman*—not as a stepping-stone for determining whether abeyance is justified.

Respondent cites *Duncan* for the proposition that Petitioner may not add a new claim after the expiration of the one-year statute of limitations. (ECF No. 59, at PageID 25624.) But that argument ignores 28 U.S.C. § 2244(d)(1)(D), which

11

anticipated the filing of claims based on newly discovered evidence, as well as equitable tolling. Respondent likewise invokes *Mayle v. Felix* to argue that Petitioner's proposed claims do not relate back to the date on which the original petition was filed, but Petitioner does not raise that argument and this Court has not made that finding.

Finally, Respondent's reliance on *Pinholster* is misplaced, insofar as *Pinholster* addressed how habeas courts should handle new evidence in support of existing claims, not entirely new claims. Petitioner's proposed *Brady* claim is, by Respondent's own characterization, a "new, never-before-seen" claim, *Id.* at PageID 25620, and Petitioner's proposed ineffective-assistance claim is comprised of one entirely new instance of alleged error based on the police records that Petitioner recently obtained, while the remaining instances appear to mirror or overlap with instances already pleaded in existing claim ten and do not appear to rely on new evidence. To the extent that Respondent offers *Pinholster* as a bulwark against "never-ending requests to add brand new claims," *Id.* at PageID 25632, even assuming for purposes of this argument that *Pinholster* stands for that proposition, the Court is not persuaded that Petitioner's request to add two discrete claims, based on recently obtained evidence, relatively early in these habeas proceedings, is properly characterized as a "never-ending request" to add new claims. Nor is the Court persuaded that Petitioner is attempting an "end-run around *Pinholster* with a breezy request for more state litigation to 'exhaust' new evidence." *Id.* at PageID 25633. The Court has already rejected Respondent's assertion that Petitioner is

seeking to exhaust only new evidence, as opposed to new claims, and the Court is not persuaded that Petitioner's requests to amend and for abeyance are anything but earnest.

Respondent argues in the alternative that Petitioner's requests to amend and for abeyance should be denied because Petitioner's proposed *Brady* claim is without merit, both because the new records on which that claim is based could have been obtained earlier with a simple request, and because Petitioner is "unequivocally and admittedly guilty." The Court finds this argument unpersuasive because, for reasons discussed more fully below, whether or to what extent the records that Petitioner recently obtained could have been obtained decades earlier is not as easily answered as Respondent suggests. Further, the Court is not of the view that an accused who makes inculpatory statements is never entitled to raise a *Brady* claim, especially where, as here, the accused has persistently challenged the constitutionality of the inculpatory statements. Respondent additionally argues against stay-and-abeyance on the ground that no viable state remedies exist for Petitioner to pursue (ECF No. 59, at PageID 25636-638); that argument is more appropriately addressed when considering Petitioner's motion for abeyance rather than his motion to amend.

Thus, as to the ultimate question of whether allowing amendment would be futile, *i.e.*, whether the proposed claims could withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the only component that neither the pleadings nor the record as

13

presently constituted can sufficiently answer is whether the proposed claims would be timely.

Petitioner argues that he is entitled to equitable tolling because his postconviction counsel never had a complete copy of the trial transcript or trial counsel's files, because his postconviction counsel rendered seriously deficient assistance, and because this is a death penalty case. It is undisputed that the federal habeas corpus statute of limitations set forth in 28 U.S.C. § 2244(d) is subject to equitable tolling under appropriate circumstances. *Holland v. Florida*, 560 U.S. 631, 634, 645 (2010); *Hall v. Warden, Lebanon Correctional Inst.*, 662 F.3d 745, 749 (6th Cir. 2011). A habeas petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing. *Holland*, 560 U.S. at 649; *Hall*, 662 F.3d at 750. The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653 (citations omitted); *Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011); *Avery v. Warden, Marion Correctional Inst.*, Case No. 2:18-cv-387, 2019 WL 1409562, at \*9 (S.D. Ohio Mar. 28, 2019); *see also Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011) ("To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances."); *Ramos-Martinez v. United States*, 638 F.3d 315, 324 (1st Cir. 2011) (citation omitted) (diligence requirement for equitable tolling "does not demand a showing that the petitioner left no stone unturned.").

14

To demonstrate "extraordinary circumstance" for equitable tolling purposes, Petitioner must show that what prevented him from timely filing was both extraordinary *and* beyond his control. *Menominee Indian Tribe of Wisconsin v. United States*, 136 S.Ct. 750, 756 (2016); *Avery*, 2019 WL 1409562, at *12. Attorney error can warrant equitable tolling, but only if it is "'far more'" serious than "'a garden variety claim of excusable neglect.'" *Giles v. Beckstrom*, 826 F.3d at 325 (quoting *Holland*, 560 U.S. at 651-52). Relatedly, attorney abandonment can rise to the level of an extraordinary circumstance warranting equitable tolling. *Robertson v. Simpson*, 624 F.3d at 785-86. Further, mental incompetence or incapacity may provide a basis for equitable tolling with a showing that (1) the petitioner is mentally incompetent; and (2) the petitioner's mental incompetence caused his failure to comply with the statute of limitations. *Ata v. Scutt*, 662 F.3d 736, 741-42 (6th Cir 2011); *Robertson*, 624 F.3d at 785-86; *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008).

Petitioner's precise argument is that equitable tolling is warranted because his postconviction counsel never had a complete copy of the transcript or trial counsel's files, because postconviction counsel provided seriously deficient assistance and even effectively abandoned Petitioner, and because Petitioner is under sentence of death. (ECF No. 56, at PageID 25438-440; ECF No. 67, at PageID 25672-673; 25680; 25700-707.) With respect to Respondent's insistence that the 12,775 pages of records that Petitioner recently obtained through a public records request were publicly available long before that request was made,

15

Petitioner asserts that it is folly to speculate "that if post-conviction counsel had made a simple public records request of the Springfield Police Department, the record holder would have provided the same 12,775 pages in the year 2000 that it provided in 2018."  (ECF No. 67, at PageID 25694.)  Beyond that, Petitioner reasons that even if postconviction counsel had been in possession of those records, without a complete copy of the transcript or trial counsel's files, postconviction counsel would still have been in no position to recognize and raise the *Brady* and ineffective-assistance claims that Petitioner only discovered when he obtained the police records.

With respect to postconviction counsel's performance and alleged abandonment, Petitioner argues that counsel filed a woefully insufficient petition that consisted of six claims supported by two exhibits—one of which was 14 pages of transcript related to a stun-belt claim, and the other of which was two affidavits by Petitioner concerning the same stun-belt claim.  (ECF No. 56, at PageID 25438-440; ECF No. 67, at PageID 25702-705.)  Not surprisingly, Petitioner notes, the state courts found that all six claims were barred by *res judicata*.  Beyond rendering seriously deficient assistance, Petitioner continues, postconviction counsel at times effectively abandoned Petitioner, both because of a heart attack that incapacitated counsel for days if not months in 2003 and because counsel let lapse multiple times during his representation of Petitioner counsel's Ohio Supreme Court certification for handling death penalty cases.  (ECF No. 67, at PageID 25700-701).

16

Finally, Petitioner asserts that equitable tolling is warranted in this instance because "death is different."  (ECF No. 67, at PageID 25673, 25706-707.)

Although the Court finds Petitioner's arguments persuasive, the Court is concerned that for all it does know about the factors informing equitable tolling—which is troubling—there is too much the Court does not know.  As the Court will discuss below, the wealth of case law on equitable tolling emphasizes the fact-intensive nature of this inquiry and the corresponding importance of exhaustive factual development.  To this point, it is necessary to set forth what the pleadings and record demonstrate, and what they do not.

The record before this Court, even with critical gaps that the Court will identify, raises grave questions about the sufficiency of postconviction counsel's representation of Petitioner, and about other irregularities in the postconviction proceedings—especially considering that this was a death penalty case.  As Petitioner asserts and the record confirms, postconviction counsel, just over a year after being appointed (ECF No. 19-9, at PageID 5252), filed a postconviction petition consisting of 17 pages, raising six claims, supported by two exhibits.  By any measure of experience with or knowledge of capital cases in Ohio, that strikes this Court as an unusually paltry petition, wanting in substantive arguments and evidentiary support.  That is especially so considering the complex circumstances of the offenses for which Petitioner was sentenced to death—including but not limited to the fact that Petitioner was charged with the commission of three aggravated murders and one attempted murder, to wit: the aggravated murders of Phree

Morrow, age 12, and Martha Leach, age 11, on August 22, 1992; the aggravated murder of Belinda Anderson on September 8, 1993; and the attempted murder of Hazel Pearson on December 7, 1993. The crimes were under investigation for four years, during which police investigated countless suspects before zeroing in on Petitioner's co-defendants and eventually Petitioner himself. Multiple people participated in the sexual assaults and murders of Morrow and Leach. And Petitioner appears to suffer from serious mental health disorders. These facts alone give rise to a reasonable inference that a robust postconviction petition was in the offing. The petition that postconviction counsel filed was hardly robust. But the Court does not know why.

The record contains no testimony, affidavits, or other substantive evidence shedding needed light on what kind of research, investigation, and strategy went into postconviction counsel's preparation of the petition. That leaves the Court with just the paucity of the petition by which to assess postconviction counsel's performance. A determination of whether equitable tolling is warranted requires more than speculation and inference.

Beyond postconviction counsel's questionable performance, Petitioner alleges with some substantiation that there were periods during which postconviction counsel actually or effectively abandoned Petitioner. The first time that postconviction counsel sought to withdraw from Petitioner's case, on September 2, 2003, he stated in his motion that he had suffered a heart attack on March 24, 2003, had been in intensive care for three days, and had been in a rehabilitation program

18

ever since. (ECF No. 19-16, at PageID 6193.) Further, in a motion to withdraw filed in the trial court on April 14, 2015, postconviction counsel noted that he had long since let lapse his Ohio Supreme Court certification to handle death penalty cases. (ECF No. 19-16, at PageID 6212.) Petitioner has provided documentation demonstrating that postconviction counsel's certification lapsed from October 27, 2000 till December 7, 2000; from July 1, 2004 till December 9, 2004; and from July 2, 2007 until June 15, 2015—the date that the state court of appeals granted counsel's motion to withdraw. (ECF No. 67-1.)

What the record does not reveal, however, is just as critical as what it does. Specifically, the record contains no evidence of whether, during any of the periods set forth above, postconviction counsel considered himself to no longer be representing Petitioner, or whether, during any of those periods, postconviction counsel was physically, mentally, or legally unable to represent Petitioner. The absence of such evidence hinders the Court's ability to determine with the confidence that an equitable tolling determination demands whether any of the periods set forth above rise to the level of actual or effective abandonment constituting an extraordinary circumstance. Similarly, the record sheds no light on what Petitioner knew of, or had a duty to inquire about, postconviction counsel's status. The latter particularly complicates the determination of whether Petitioner exercised reasonable diligence in pursuing his rights. The Sixth Circuit has found a failure to exercise reasonable diligence from a prisoner's failure or delay in inquiring about the status of his or her legal case. *Keeling v. Warden, Lebanon*

19

*Correctional Inst.*, 673 F.3d 452, 463-64 (6th Cir. 2012); *Robinson v. Easterling*, 424

F. App'x at 442-43 (6th Cir 2011); *Winkfield v. Bagley*, 66 F. App'x 578 583-84 (6th

Cir. 2003); *see also, Patterson v. Lafler*, 455 F. App'x 606, 610-11 (6th Cir. 2012)

(declining to apply equitable tolling where postconviction counsel had suffered

cervical spine problems requiring surgery that prevented timely filing, due to the

petitioner's failure to inquire about the status of his petition).[2]

Petitioner alleges with some substantiation that postconviction counsel never

had complete copy of the trial transcript (and perhaps defense counsel's trial file).

(ECF No. 67, at PageID 25674-677, 25680, 25695.)  Petitioner asserts, and this

Court's review of the record confirms, that postconviction counsel initially had

access only to transcripts from pretrial, competency, and final sentencing hearings.

(ECF No. 67, at PageID 25674 (citing ECF No. 19-17, at PageID 6339).)  Eventually,

Petitioner continues, postconviction counsel obtained access to "significant

amounts" of other portions of the transcripts—specifically, the mitigation hearing

and closing arguments—which counsel was only able to access by driving to the

Clark County Clerk's Office and reading the transcripts there.  *Id.*  On appeal, years

later and with new postconviction appellate counsel, the state court of appeals

ordered prior postconviction counsel to provide postconviction appellate counsel

with a copy of the transcript.  *Id.* at PageID 25677 (citing ECF No. 19-17, at PageID

---

[2]  With respect to questions about the adequacy of postconviction counsel's representation of Petitioner, the Court notes, as Petitioner has, that although the state trial court docket indicates that W. Joseph Edwards was also appointed to represent Petitioner in postconviction (ECF No 19-16, at PageID 6214-15), it does not appear that Edwards ever actually represented Petitioner or otherwise did any work on his case.

6337). According to Petitioner, direct appeal counsel did not have a copy of the transcript and original postconviction counsel provided postconviction appellate counsel with transcripts of just two hearings. *Id*. at PageID 25677 (citing ECF No. 19-17, at PageID 6341, 6339). Eventually, Petitioner states, the appellate court located a copy of the transcript, but required postconviction appellate counsel to review the transcript at the clerk's office. *Id*. at PageID 25677 (citing ECF No. 19-17, at PageID 6343-44).

The foregoing is stunning and worth exploring in more detail than the record currently permits. The notion of an attorney preparing a postconviction petition, especially in a death penalty case, without having a complete copy of the trial transcript is incomprehensible. The importance of having a complete copy of the trial transcript in preparation for filing a postconviction petition seems too obvious to require stating. But to the extent that it does require stating, it is telling that an Ohio's defendant's deadline for filing a timely postconviction petition is triggered by the filing of the trial transcript in the court of appeals. Ohio Rev. Code § 2953.21(A)(2). Although it seems evident from the record that postconviction counsel was aware that he was not in possession of a complete copy of the trial transcript, the record does not illuminate what sort of research, investigation, and strategy convinced counsel that he did not need a complete copy of the trial transcript to prepare the postconviction petition. That seems particularly important to probe, in view of the fact that the petition that counsel filed consisted of 17 pages, raising six claims, supported by two exhibits.

21

Additionally, it is not entirely clear from the record whether postconviction counsel's failure to obtain a complete copy of the transcript was because he deemed it unnecessary or because it was unavailable. It is reasonable to infer from pleadings that were filed during the postconviction appellate proceedings in 2015 that there was a time during the proceedings when a complete copy of the transcript could not be located. That does not clear up whether a complete copy was available to postconviction counsel prior to his filing the petition. The postconviction petition includes a statement that "[t]he transcript of proceedings in this case was filed on December 14, 2000." (ECF No. 19-16, at PageID 6140.) That corresponds with a December 14, 2000 entry on the trial court docket indicating that an original transcript of the jury trial and sentencing disposition was to be made, with one copy to be provided to defense counsel and one copy to be provided to the prosecution. *Id*. at PageID 6115. The foregoing strongly indicates, but does not definitively establish, that a complete copy of the transcript was available to postconviction counsel. This issue warrants further investigation.

Another circumstance, among the totality, that raises a red flag to this Court is the fact that 13 years elapsed between the time the appellate court dismissed the postconviction appeal for lack of a final appealable order, and the trial court's actually issuing compliant findings of fact and conclusions of law. Counsel filed the 17-page petition on June 4, 2001. (ECF No. 19-16, at PageID 6138-54.) Six months later, on January 10, 2002, the trial court summarily dismissed the petition without issuing any findings of fact and conclusions of law. *Id*. at PageID 6172. Several

22

weeks later, postconviction counsel filed a motion asking the trial court to issue findings of fact and conclusions of law (*Id.* at PageID 6173); but it does not appear that the trial court ever ruled on that motion or issued the requested findings and conclusions. Moreover, on August 26, 2002, the state sought leave to file a response, indicating that the state had never received the petition. *Id.* at PageID 6175. The state filed its response on September 30, 2002, and postconviction counsel filed his reply on November 7, 2002. *Id.* at PageID 6178, 6188. It does not appear from the record that these pleadings resulted in the trial court issuing another decision setting forth findings of fact and conclusions of law. And ten months after he filed his reply, on September 2, 2003, postconviction counsel filed his first motion to withdraw, noting that he had suffered a heart attack six months earlier.

Despite filing a motion requesting findings of fact and conclusions of law shortly after the trial court issued its summary decision, and despite the fact that the trial court permitted the state to file a response and Petitioner to file a reply, postconviction counsel still pursued a timely appeal from the trial court's original summary decision. Postconviction counsel filed his appellate brief on April 5, 2002. (ECF No. 19-17, at PageID 6229.) The court of appeals dismissed the appeal for lack of a final appealable order, since the trial court's summary decision did not set forth the required findings of fact and conclusions of law. *Id.* at PageID 6407.

Some *thirteen years later*, on March 25, 2015, the trial court issued an entry setting forth findings of fact and conclusions of law denying all six of the postconviction claims on the basis of *res judicata*. (ECF No. 19-16, at PageID 6195.)

23

The trial court indicated that although it had drafted findings of fact and conclusions of law immediately after the court of appeals dismissed the appeal in 2002, the trial court only recently discovered that those findings and conclusions had never been docketed and could no longer be located, prompting the trial court to draft those findings and conclusions anew in the March 25, 2015 entry. *Id.* at PageID 6197.

The Court understands that mistakes happen and matters can be overlooked. But, however this 13-year lapse was able to occur, the obvious question remains: who was looking out for Petitioner's rights during that time? Combined with the health issues and certification lapses discussed above, postconviction counsel's apparent failure to inquire while Petitioner's postconviction action sat dormant for 13 years strikes this Court as an important issue to explore vis-à-vis the "extraordinary circumstance" component of an equitable tolling determination. Similarly, with respect to the "reasonable diligence" component, as discussed above in conjunction with postconviction counsel's health issues and certification lapses, it is important to know whether Petitioner ever inquired about the status of his postconviction case, or whether he had a duty to do so. The record as presently constituted answers neither question.

A final circumstance that bears consideration is Petitioner's mental capacity. Petitioner appears to suffer from serious mental health problems. Although he is not strictly offering his mental incapacity, especially during the postconviction proceedings when the facts underlying his proposed claims arguably should have

been discovered and developed, as the reason to apply equitable tolling, the fact that mental incompetence can provide the basis for equitable tolling persuades this Court that it is a factor to be considered in the totality of circumstances. *See, e.g., Ata v. Scutt*, 662 F.3d at 741-42 (mental incompetence or incapacity may provide a basis for equitable tolling); *McSwain v. Davis*, 287 F. App'x at 456 (same); *see also Avery v. Warden, Marion Correctional Inst.*, 2019 WL 1409562, at *11 (holding that courts considering the application of equitable tolling should consider the realities and circumstances of a prisoner's confinement) (discussing *Jones v. United States*, 689 F.3d 621, 627 n.4 (6th Cir. 2012)). Although mental incompetence or incapacity typically informs the "extraordinary circumstance" component of an equitable tolling requirement, the Court is of the view that that factor could be relevant to the "reasonable diligence" component as well, as possibly lessening Petitioner's duty to inquire about the status of his case.

The confluence of circumstances set forth above presents serious questions about the representation that Petitioner received during postconviction proceedings, as well as other irregularities that occurred during the postconviction proceedings, that *could*, if the record is more fully developed, trigger the application of equitable tolling as to the two claims that Petitioner seeks to add.[3] As noted earlier, courts have made clear how fact-intensive an equitable tolling inquiry is, and thus how

---

[3] Petitioner does not appear to argue that his proposed claims nineteen and twenty might be timely under 28 U.S.C. § 2244(d)(1)(D), which provides that the statute of limitations begins to run when the factual predicate underlying a claim could have been discovered through the exercise of due diligence. But even if he had, that argument would seem to suffer from the same or similar factual gaps that afflict his equitable tolling argument—namely, whether records that were

important factual development is to that inquiry. *See, e.g., Nassiri v. Mackie*, 967 F.3d 544, 548 (6th Cir. 2020) ("When faced with lingering questions of fact in confronting an equitable tolling argument, courts frequently remand for further factual development and legal argument.") (collecting cases); *Ata v. Scutt*, 662 F.3d at 745; *Robertson v. Simpson*, 624 F.3d at 785-86 ("Whether equitable tolling is warranted is a fact-intensive inquiry best left to the district courts.") (citing *Holland*, 560 U.S. at 649-50); *Avery v. Warden, Marion Correctional Inst.*, 2019 WL 1409562, at *9. With respect to every circumstance presented in this case, the Court has identified important questions that the record, as currently constituted, does not answer. And this Court would prefer to obviate the possibility of this case being remanded years down the road for factual development that this Court could undertake now.

With the exception of timeliness, the Court finds that every other factor militates in favor of allowing Petitioner to amend his petition to add proposed claims nineteen and twenty. But being unable to determine whether Petitioner's proposed claims would be timely or eligible for equitable tolling, the Court must **DENY** Petitioner's Motion to Amend (ECF No. 56), but does so **WITHOUT PREJUDICE**, subject to reconsideration or *timely* renewal. The Court is of the view that Petitioner should be given the opportunity to more fully develop the facts underlying his plea for the application of equitable tolling.

---

technically publicly available could have been discovered sooner than 2018.

To that end, the Court **DIRECTS** the Magistrate Judge to convene a status conference to discuss, and establish whatever briefing schedule is necessary to facilitate, further factual development on the issue of whether equitable tolling, or even 28 U.S.C. § 2244(d)(1)(D), should apply to proposed claims nineteen and twenty.

### B.     Motion to Stay

Having denied, for the time-being, Petitioner's motion to amend, this Court is not faced with a mixed petition in need of the stay-and-abeyance procedure set forth in *Rhines v. Weber*.  To that point, the Court already rejected Petitioner's argument that "amending the habeas petition is not a prerequisite to granting the abeyance motion," (ECF No. 67, at PageID 25680-81), in its November 26, 2019 order addressing Petitioner's motion for clarification.  (ECF No. 37, at PageID 9546-47.)

As with Petitioner's motion to amend, the Court **DENIES** Petitioner's Motion to Stay (ECF No. 55), **WITHOUT PREJUDICE** and subject to reconsideration or renewal, should Petitioner succeed in amending his petition to add unexhausted claims.

## IV.     CONCLUSION

For the foregoing reasons, Petitioner's motions for abeyance (ECF No. 55) and to amend (ECF No. 56) are **DENIED, WITHOUT PREJUDICE** and subject to reconsideration or renewal as set forth above.

The Magistrate Judge is **DIRECTED** to convene a status conference to discuss, and establish whatever briefing schedule is necessary to facilitate, further

27

factual development on the issue of whether equitable tolling, or even 28 U.S.C.

§ 2244(d)(1)(D), should apply to proposed claims nineteen and twenty.  That status

conference can take place in whatever format the Magistrate Judge deems best, in

view of the COVID-19 pandemic.


**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**